769 N.W.2d 343 (2009)
278 Neb. 165
STATE of Nebraska, appellee,
v.
Luis O. BARRANCO, appellant.
No. S-08-142.
Supreme Court of Nebraska.
July 24, 2009.
*345 Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, Lincoln, for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger, Lincoln, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Nebraska law provides that in a criminal case, "[w]hen a case is finally submitted to the jury, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court."[1] Although this provision can be waived by agreement of the defendant and the State, it is otherwise mandatory.[2]
In this case, the district court indicated that although the defendant had not waived sequestration, the court intended to allow the jury to separate if a verdict had not been reached by the end of the day. But the jury actually reached a guilty verdict the same morning the case was submitted, so it never separated. Nonetheless, the defendant appeals, claiming the court erred. Because the law was actually complied with in this case, we find no reversible error. Therefore, we affirm.

BACKGROUND
Luis O. Barranco was charged by information with one count of strangulation and one count of domestic assault in the third degree.[3] The matter proceeded to a jury trial in the district court. Evidence was adduced by the State and Barranco, and the parties rested.
At the jury instruction conference, Barranco objected to the court's proposed jury instruction No. 14, which provided in relevant part that "[i]f you do not agree on a verdict by 5:00 o'clock p.m. each evening, you may recess your deliberations until 9:00 o'clock a.m. the following working day morning. When you do separate, during that time, you are not allowed to discuss this case with anyone, even another juror." Barranco objected on the *346 ground that "the law in the State of Nebraska is the jury is to be kept together until they reach a verdict so I would object to the jury being allowed to separate." The court overruled the objection.
Because the court's explanation of its decision is important to understanding Barranco's appellate argument, we quote the judge's discussion of the subject at some length:
Well, I've given this a great deal of thought and the one thing I noted is that the applicable statute, Section 29-2022 appears to have not been amended since before 1929 and perhaps it hasn't been amended since sometime in the 19th century. And arguably when perhaps only men served as jurors, we are all aware that sequestration can cause undue hardship to people such as single parents or parents who are both employed.
Although I don't think it is up to me to change the statute and all of us have certain quarrels with statutory schemes of various types, it is up to the Legislature to change those. But it seems to me that the statute is not compatible with modern society and if we excused everyone from jury service that sequestration could cause a hardship for, the result certainly would be a jury that's not representative of the community. Sequestration results in hardship and inconvenience to court personnel and increases dramatically the costs of trials, since our experience has been that hotels often charge for the rooms even when they are cancelled.
I've been on the district court bench in excess of 24 years and I'm generally familiar with the rare sequestration of juries in other districts in the state and the fact that private practice criminal defense attorneys in this county rarely, if ever, request the jury be sequestered except in the most serious type of cases and even then it is sometimes not done.
This is a simple case. It involves a Class IV felony and a Class I misdemeanor.[4] There has been no publicity and it is safe to conclude there will be none. There is absolutely no reasonable reason to require that the jur[ors] be sequestered, which would be a hardship on them.
I am aware of the Robbins case at 205 Neb. 226, 287 N.W.2d 55,[5] which was decided in 1980 which was over 27 years ago, and although I don't think the Supreme Court would rule otherwise, they perhaps should be given an opportunity to revisit the case in view of modern society or if the court concludes that any change must come from the Legislature, perhaps the decision of the Supreme Court denying the trial judge's discretion to not order sequestration would serve as an impetus for legislative action.
As stated in Robbins, the statute is aimed to protect the defendant's right to a fair trial. Considering the nature of the charges and the complete lack of publicity or public interest in this case, I have concluded that sequestration is not necessary to preserve ... Barranco's right to a fair trial particularly if appropriate, supplemental, cautionary instructions are given to the jur[ors] if they do not reach a verdict by the end of the day tomorrow.
So the objection to Instruction 14 will be overruled.
At 8:55 a.m. the following day, before the jury was instructed, Barranco again objected to the court's decision not to sequester *347 the jurors. The court conceded that Barranco's understanding of the law was correct, but said that "the court has made a decision and the court is going to stay with that decision." The judge explained:
I don't know what goes on in the minds of people out in the state or in other districts. It may be that there is an undercurrent or a subtle understanding in those districts that if the defendant does not waive sequestration, that if the defendant is convicted then when it comes time for sentencing it would be an adverse situation for the defendant. I have never thought that way. I don't think I've ever let it be known that I would do that and the judges of this district certainly would never take basically, if you want to put it that way, take it out on the defendant....
But in any event, I'm not going to send the jury home to get overnight things right now so your request will be denied.
Barranco moved for a mistrial and asked the judge to recuse himself and assign the matter to a different judge. The court overruled the motions for mistrial and recusal.
Following those rulings, closing arguments were had and the jury was instructed. Instruction No. 14 was given as quoted above. The case was submitted to the jury at 10:04 a.m. Court resumed at 11:20 a.m., at which time the jury returned a verdict of guilty on the assault charge, but not guilty on the strangulation charge.
The court accepted the verdicts and entered judgment accordingly. Barranco filed a motion for new trial alleging that the court's refusal to sequester the jurors violated his constitutional rights. The court found that because the jury had never separated, Barranco had not been prejudiced, and overruled the motion for new trial. Barranco was sentenced to 180 days' imprisonment. He appeals.

ASSIGNMENT OF ERROR
Barranco assigns that the district court erred in refusing to sequester the jury during deliberations.

ANALYSIS
[1-3] As briefly mentioned above, § 29-2022 provides that in a criminal case,
[w]hen a case is finally submitted to the jury, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court. The officer having them in charge shall not suffer any communication to be made to them, or make any himself, except to ask them whether they have agreed upon a verdict, unless by order of the court; nor shall he communicate to anyone, before the verdict is delivered, any matter in relation to the state of their deliberations. If the jury are permitted to separate during the trial, they shall be admonished by the court that it is their duty not to converse with or suffer themselves to be addressed by any other person on the subject of the trial, nor to listen to any conversation on the subject; and it is their duty not to form or express an opinion thereon until the cause is finally submitted to them.
We have explained that under § 29-2022, the defendant has the right to have the jury kept together until the jury agrees upon a verdict or is discharged by the court.[6]
[4, 5] The basic purpose of § 29-2022 is to preserve the right to a fair trial by shielding the jury from improper contact *348 by others and restricting the opportunities for improper conduct by jurors during the course of their deliberations.[7] In the absence of express agreement or consent by the defendant, a failure to comply with § 29-2022 by permitting the jurors to separate after submission of the case is erroneous, creates a rebuttable presumption of prejudice, and places the burden upon the prosecution to show that no injury resulted.[8] Consequently, the issue is whether there was improper contact or communication with or by the jurors during separation which resulted in prejudice to the defendant.[9]
Obviously, there was no prejudice in this case. More fundamentally, the court did not fail to comply with § 29-2022. The record establishes that after the case was submitted, the jurors were kept together until they agreed upon a verdict. Whatever the district court's intentions might have been, the requirements of § 29-2022 were met in this case. Barranco does not argue otherwisehe does not argue that the jury actually separated after the case was submitted or that the giving of instruction No. 14 was somehow prejudicial. Nor is any prejudice from the giving of instruction No. 14 apparent, given that it is substantially the same as the pattern instruction that is given in cases where sequestration is waived.[10]
[6, 7] Instead, Barranco argues that the court's intended refusal to sequester the jury constitutes structural error, requiring reversal. Structural errors are errors so affecting the framework within which the trial proceeds that they demand automatic reversal.[11] They are distinguished from trial errors, which generally occur during the presentation of the case to the jury and may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether they were harmless beyond a reasonable doubt.[12]
[8] We have clearly established that failure to comply with § 29-2022 does not demand reversal if the defendant was not prejudiced.[13] As we understand Barranco's argument, he is trying to distinguish between simple failure to comply with § 29-2022 and deliberate refusal to do so. There is no basis for such a distinction, but more importantly, as explained above, § 29-2022 was actually complied with in this case. The court may have intended to disobey § 29-2022, but it never actually happened. The distinction between structural and trial error is not implicated when no error is actually committed.
[9, 10] Barranco also argues that trial before a judge who is not impartial constitutes structural error. We agree.[14] But Barranco has not assigned error to the court's denial of his motion to recuse, nor does he direct us to anything in the record reflecting an actual bias against him. In fact, he concedes that this case involves neither a personal animosity toward the defendant or his attorney nor any conflict *349 of interest; instead, he asserts that "this case involves judicial bias which is based upon the judge's personal disagreement with the law he is charged with enforcing."[15]
[11] But under the standard we have articulated for evaluating a trial judge's alleged bias, the question is whether a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[16] The court's disagreement with § 29-2022 and our application of it does not suggest that the court was not impartial toward the parties. The court's reasoning, although inconsistent with precedent, clearly articulated the court's belief that strict enforcement of § 29-2022 was not essential to Barranco's right to a fair trial. And there is no basis on this record to conclude that he actually received anything less than a fair trial.
[12-14] Obviously, we cannot countenance the court's conduct. Some of the court's concerns about whether § 29-2022 remains sound policy in the context of modern trial practice may certainly be worthy of further debate. Nonetheless, this is fundamentally a question of public policy, and it is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state.[17] Our decisions applying § 29-2022 are grounded in the plain language of the statute,[18] which we are not at liberty to change.[19] Vertical stare decisis compels lower courts to follow strictly the decisions rendered by higher courts within the same judicial system,[20] and the most fundamental underpinning of our judicial system is the law, not the personal beliefs of the men and women who are privileged to serve as judges.[21] A judge who disagrees with a statute or a decision of a higher court may express that disagreement, but must do so in a way that is consistent with his or her obligation to do what the law requires.
But in this case, regardless of the district court's intentions, no error actually occurred. And the court's expression of its disagreement with § 29-2022 neither harmed Barranco nor suggested any bias against him. Therefore, we find Barranco's sole assignment of error to be without merit.

CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.
HEAVICAN, C.J., not participating.
NOTES
[1] Neb.Rev.Stat. § 29-2022 (Reissue 2008).
[2] See State v. Robbins, 205 Neb. 226, 287 N.W.2d 55 (1980).
[3] See Neb.Rev.Stat. §§ 28-310.01 and 28-323 (Reissue 2008).
[4] See id.
[5] See Robbins, supra note 2.
[6] See State v. Bao, 263 Neb. 439, 640 N.W.2d 405 (2002).
[7] Robbins, supra note 2.
[8] Bao, supra note 6; Robbins, supra note 2.
[9] Id.
[10] See NJI2d Crim. 9.0.
[11] See State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007), cert. denied ___ U.S. ___, 128 S.Ct. 715, 169 L.Ed.2d 560.
[12] See id.
[13] See, Bao, supra note 6; Robbins, supra note 2.
[14] See McKinney, supra note 11.
[15] Brief for appellant at 29.
[16] See State v. Pattno, 254 Neb. 733, 579 N.W.2d 503 (1998).
[17] See State v. Gales, 269 Neb. 443, 694 N.W.2d 124 (2005).
[18] See, Bao, supra note 6; Robbins, supra note 2.
[19] See State v. Warriner, 267 Neb. 424, 675 N.W.2d 112 (2004).
[20] State v. Hausmann, 277 Neb. 819, 765 N.W.2d 219 (2009).
[21] State v. Nichols, 8 Neb.App. 654, 600 N.W.2d 484 (1999).